# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| **AISHA MICHEL**, as Mother and Legal Guardian of Y.H., a Minor, | * * * | |
| *Plaintiff,* | * | No.16-cv-05390 |
| v. | * * | |
| **VILLAGE OF SAUK VILLAGE**, a municipal corporation, **MAYOR DAVID HANKS,** in his official capacity, **OFFICER GARY LUKE,** individually and in his official capacity, **SAUK VILLAGE CHIEF OF POLICE**, in his official capacity | * * * * * * * | **TRIAL BY JURY** |
| *Defendants.* | * | |

# COMPLAINT

NOW comes Plaintiff, AISHA MICHEL, as Mother and Legal Guardian of Y.H., a minor, by and through her attorneys, James D. Montgomery and Associates, Ltd., against the VILLAGE OF SAUK VILLAGE, a municipal corporation, MAYOR DAVID HANKS, in his official capacity, OFFICER GARY LUKE, individually and in his official capacity, SAUK VILLAGE CHIEF OF POLICE, in his official capacity, collectively ("Defendants"). In support, Plaintiff avers the following:

## PARTIES

1.  Plaintiff, Aisha Michel, as mother and legal guardian for minor Y.H., resides in the Village of Sauk Village in Cook County, Illinois.

2.  Defendant, Village of Sauk Village ("Sauk Village"), is a municipal corporation located in Cook County, Illinois. Defendant, David Hanks, is the Mayor

of Sauk Village and appoints the Chief of Police. According to the most recent U.S. Census Bureau statistics for Sauk Village, African Americans comprise over 60% of the population.

3. Sauk Village Police Department ("SVPD"), is a public body under Defendant Sauk Village; and the Sauk Village Police Chief ("SVPD Chief of Police"), maintains the duty to supervise and train sworn officers.

4. Defendant, Officer Gary Luke ("Gary Luke"), is a sworn officer who resides in Cook County, Illinois, upon information and belief.

## JURISDICTION

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367.

6. Venue is proper under 28 U.S.C. § 1391(b). All parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred within the district.

## BACKGROUND FACTS

7. Y.H. is a minor who resides with his mother, Aisha Michel, in Sauk Village, Illinois.

8. Since 2010 SVPD Officers have been armed with M-26 and/or X-26 Tasers ("Tasers") purchased and issued through SVPD. "Taser" is the brand name for conducted energy devices ("CED") generally used by law enforcement. CEDs, such as Tasers, produce 50,000 volts of electricity. The electricity stuns and temporarily disables individuals by causing involuntary muscle contractions.

9. According to a study and report published in 2011 by the U.S. Department of Justice's National Institute for Justice, most [law enforcement] agencies have a 'use of force continuum' beginning with verbal commands for compliance up to physical force. Most agencies allow only soft tactics, without physical force, against a subject who refuses to comply with commands. Just under half of [law enforcement] agencies allow officers to use chemical weapons at that point.

However, if the subject tenses and pulls away when an officer tries to handcuff him or her, most agencies will then allow chemical agents and hard empty-hand tactics, such as punching. Many also allow for CED use at this point, but about 40 percent do not. Almost three-fourths allow for CED use if the suspect flees, and almost all allow it when the subject assumes a boxer's stance. Most agencies do not allow baton use until the subject threatens the officer by assuming the boxer's stance.

10. **SVPD had absolutely no policies**, or 'use of force continuum' with training for officers using tasers on citizens of Sauk Village, for all relevant times alleged herein. In an emailed response to the Sauk Village Administrator on August 20, 2015, the SVPD Deputy Chief of Police, Rebecca Salisbury stated,

*"There is no existing Departmental General Order specifically detailing the use of Tasers for the Sauk Village Police Department…"*

11. On or about July 14, 2015, Y.H. was tased, and detained by Officer Gary Luke. Y.H had *no weapon, no shirt, no shoes, and no socks* on at the time he was tased, he did not flee and posed no threat of endangering any officer or himself. Y.H. was arrested and transported to the police station but was later released without charges. As a result of this traumatic experience, Y.H. has suffered serious injuries.

12. Plaintiff sent preservation letters to the SVPD and Sauk Village on July 16, 2015, demanding the preservation of all evidence including, but not limited to, any video contained via dashboard camera(s) and via body camera(s).

13. On Friday, July 24, 2015, Plaintiff sent requests pursuant to the Freedom of Information Act (FOIA) for several documents, videos, and reports relating to Defendants' taser policies, officer misconduct history, and specifically the July 14th tasing incident reports.

14. By Monday, July 27, 2015, Sauk Village Police Officers were intimidating Y.H. and his family. Officer Gary Luke and an Unknown SVPD Officer went to Plaintiff's home on the morning of Monday, July 27, 2015 after officers discovered that FOIA requests had been made. Officer Gary Luke and an unknown SVPD officer banged on Plaintiff's front and back doors and stood post in his yard. Y.H. and his family were in fear for their lives, as officers continued to drive up and down the street throughout the night glaring at the family.

15. In September of 2015, the Mayor of Sauk Village publicly announced that after a review, Sauk Village learned that the Chief of Police, and the Deputy Chief of Police did not have any policies in place relating to the use of tasers, at the time Y.H. was tased by Officer Gary Luke. Mayor David Hanks stated:

> In October of 2014, the former Police Chief made an "on-line" purchase of 25 Taser Weapons for the Sauk Village Police Department. In July of 2015, an Officer used one of those weapons to Taser [Y.H]. Several weeks later the Village received a pending lawsuit request from an Attorney representing [Y.H.]. In August of 2015, our Village Administrator learned that neither the former Chief nor his Deputy Chief had developed policies authorizing the use of Taser weapons for our Officers… Due to the findings, I regretfully ordered the Taser Weapons removed from use. I also instructed our attorneys to immediately have a Taser policy put in place… However, the Village is not out of the woods yet. Almost all of the Police Departments General Orders have not been updated since 2005…. It is clear that the former

4

Police Chief and the former Deputy Police Chief have been remiss in their responsibilities to the Village and our Officers… **Exhibit A.**

16. In August of 2015, at Sauk Village's National Crime Night Out, SVPD Officers were publicly recorded conducting taser demonstrations with the knowledge and encouragement of Sauk Village. As far back as 2013, SVPD Officers, armed with tasers, have been pictured with various Village Trustees, the Mayor, and Village Administrators. Sauk Village Trustees have even admitted that officers have been using tasers since 2010.

17. On or about October 7, 2015, Sauk Village Freedom of Information Officers finally turned over several videos relating to, but not depicting, the *actual* tasing of Y.H. One video depicts events prior to Y.H. being tased, and another video depicts events after Y.H. was tased.

18. Plaintiff discovered that the video captured and created on July 14, 2015, depicting events prior to Y.H. being tased, was "modified" on July 28, 2015, at 7:15 pm. Not surprisingly, July 28th was the same day that notice was given to the Chief of Police, Mayor, and State's Attorney's Office, that SVPD Officers were intimidating and harassing Y.H. and his family. On November 23, 2015, SVPD's Freedom of Information Officer confirmed that any additional videos had been "purged" or were not "operational," despite Plaintiff's July 16th preservation letter.

19. The pre-tasing video shows several youth, including Y.H., walking down the street. Officer Gary Luke could be heard on the video making statements to Y.H., such as, "You weak as hell." The video depicted clear disdain for the minor Y.H., and although Officer Gary Luke followed the youth for a while longer, they continued on to their destination and the video terminated.

20. The video depicting events after Y.H. was tased, shows Y.H. walking inside the police station, agonizing in pain with every step. Inside the station, Officer Gary Luke placed the shirtless, barefoot minor against a wall with his arms extended above his head. As Officer Gary Luke repeatedly jerked on the taser "barbs" deeply lodged in Y.H.'s flesh, Y.H. could be heard agonizing in pain. Specifically, the video clearly depicted Y.H. standing with his hands extended on the wall, and struggling to hold in outbursts of pain. Officer Gary Luke could be heard telling Y.H., *"You are in custody, you 'gotta' relax,"* and an Unknown SVPD Officer interjecting, **"...or you're gonna get tased again."** Again, Y.H. had his hands extended, he was unarmed, and was not resisting.

21. Officer Gary Luke even **bragged** about SVPD's policy, on video, when stating to Y.H.'s mother, "I'll be honest - normally I don't warn."

22. Since 2013, SVPD officers have been documented tasing victims including minors. About 25 tasing incidents and counting have been discovered when SVPD did not have a single directive, policy or order in place. On one occasion in particular, a SVPD Officer tased an unarmed fourteen-year old African American girl weighing approximately 110 lbs., who was a block from her home. The 14-year-old girl was tased because she allegedly ran from an officer.

23. Sadly, SVPD has lost, destroyed, or failed to record numerous tasing incidents. On another occasion an SVPD Officer was video recorded improperly threatening the use of a taser because the SVPD Officer believed the youth used profanity. The officer failed to record this incident in the incident log or a police report, and but for a video recording, this incident would have gone undetected.

24. Without tasing policies, a 'use of force continuum', training, or procedures, SVPD Officers have tased countless citizens and lost, destroyed or simply failed to record the incidents in their reports.

## 42 U.S.C. § 1983 - DELIBERATE INDIFFERENCE - To Adequately Train and Supervise
## (v. Sauk Village, Sauk Village Mayor and the SVPD Chief of Police)

25. At all relevant times, Defendants, Sauk Village, the Sauk Village Police Department, the Sauk Village Mayor, and the SVPD Chief of Police had a duty to train and supervise police officers within Sauk Village.

26. At all relevant times, Defendants purchased and armed SVPD officers with tasers, and thereby incurred the obvious duty to train and supervise officers on the proper use of force with tasers. Defendants were thoroughly educated on the risks of injuries to individuals who were tased. In fact, SVPD officers had a public tasing demonstration to show the resulting risks of being tased.

27. Defendants publically admitted they had no taser policies in effect, at all relevant times alleged herein. In fact, the Defendants stated:

*"It is clear that the former Police Chief and the former Deputy Police Chief have been remiss in their responsibilities to the Village and our Officers."*

28. Indeed, the SVPD Chief of Police was "remiss," and indifferent to his carelessness. He never trained, supervised, or directed SVPD Police Officers on the use of taser force and as a direct and proximate cause, Officer Gary Luke shot an unarmed minor, Y.H., when the minor presented no physical threat to any officer and did not flee. Most disturbing, SVPD Officers have been shooting minors with tasers since 2013 as alleged herein.

29. Defendant, Village of Sauk Village, acquiesced to the use of tasers without a general policy, directive, or order by Defendant SVPD. A Sauk Village Trustee stated in a video recorded meeting, "We have had tasers since 2008, 2010."

In fact, prior to the tasing of Y.H., the Defendants conducted a review all of the general orders and directives and never reviewed or discussed a taser policy, but authorized its use on citizens. Sauk Village Trustees publicly stated they were "careless" in their review of policies.

30. Defendants knew they had never reviewed, analyzed, nor discussed policies relating to the use of tasers by SVPD; yet, SVPD officers were openly and publicly using tasers on citizens of Sauk Village, including minors.

31. Defendant, Sauk Village, knew, promoted, permitted and authorized the use of tasers by its Sauk Village Police Officers without a single general order, policy, or directive in place. The unjustified use of tasers was a permanent and prevalent practice for several years without the proper training or policies being provided to Unknown Sauk Village Police Officers and particularly to Officer Gary Luke.

32. Defendants knew that since 2013, SVPD Officers were tasing minors as young as 14 years old prior to the tasing of Y.H. Defendants never instituted a single policy, order or training class to ensure that officers were safeguarding the rights of the minors. Most law enforcement agencies have strict policies on tasing minors, but Defendants simply didn't care to institute *any* policies. But for Y.H. securing legal counsel, Defendants would never have addressed SVPD's unconstitutional pervasive tasing practices.

33. Defendants failed to train its officers on the use of reasonable physical force when using tasers, including on a minor. Indeed, Unknown SVPD Officers have established a custom, policy and usage, of threatening the use of taser force, based on the officers' "personal" reasons as alleged herein.

34. As a direct and proximate cause of the Defendants' deliberate indifference to train, supervise or institute proper policies, Sauk Village Police officer(s) have been engaging in the use and threatened use of tasers to summarily punish suspected offenders, indeed, as the minor Y.H. was punished and threatened again at the police station.

35. As a direct and proximate cause of the Defendants' deliberate indifference to train, supervise or institute proper policies, Unknown SVPD Officers have also failed to record the threatened use of taser force. On March 10, 2015, another SVPD Officer threatened the use of taser force when he approached a group of youth playing basketball. The officer pulled his taser on the youth, threatened to tase the minor, and the minor fled in fear for his life, but no arrest or charges were ever filed. The officer never recorded this incident, and but for a cellular phone camera, the incident would have gone undetected.

36. As a direct, and proximate cause of the Defendants' deliberate indifference to train, supervise or institute policies, Defendants, Officer Gary Luke, and Unknown SVPD Officers, have a practice and custom of using and threatening the use of tasers on unarmed, non-threatening citizens as punishment and intimidation tactics in violation of the Fourth and Fourteenth amendments.

37. As a direct result of Defendants' deliberate indifference to properly train or supervise SVPD officers, Unknown SVPD Officers reasonably believe and believed they could use and threaten the use of taser force against Plaintiff, an unarmed minor, with his hands raised on the wall, dressed only in basketball shorts, no shoes, no socks, and no shirt. Most disturbing, in the video depicting the post-tasing events, an Unknown SVPD Officer threatens the use of additional taser force on the minor Y.H. as he stood helpless with his arms outstretched on the wall.

38. As a direct result of Defendants' deliberate indifference to properly train or supervise SVPD officers, citizens, such as Y.H., are not even warned that they are close to being tased. In fact, in the video depicting the post-tasing events Officer Gary Luke clearly brags that he normally does not warn any suspect prior to tasing that individual. This is clear, articulated indifference to violating the civil rights of the residents of Sauk Village.

39. As a direct result of Defendants' deliberate indifference to properly train or supervise, Officer Gary Luke, and Unknown SVPD Officer(s) developed and enforced a custom, practice, and usage of summarily punishing suspects, including minor youths, with tasers and/or the threat of tasers in violation of their civil rights.

40. As a direct, and proximate cause of the Defendants' deliberate indifference to train, supervise or institute proper policies, Sauk Village Police officer(s) have no guidance on what Sauk Village deems a proper and "legal" use of taser force on citizens of Sauk Village. SVPD Officers have been using their tasers on whomever, whenever, and however they want.

41. As a direct, and proximate cause of the Defendants' deliberate indifference to train, supervise or institute proper policies, the number of victims tased by SVPD Officers may be difficult to ascertain and requires immediate judicial intervention.

42. As a direct result of Defendants' conduct, Plaintiff has suffered and continues to suffer severe emotional distress, and severe pain and suffering.

**WHEREFORE**, Plaintiff prays for compensatory damages, injunctive and declaratory relief. Plaintiff further prays for attorney's fees and costs pursuant to 42 U.S.C. §1988 and any other relief this court deems reasonable and just.

## BATTERY—Against Officer Gary Luke-*Respondeat Superior*
(v. Village of Sauk Village)

43. Defendant Sauk Village, by and through its employee police officer, Gary Luke, intentionally and forcibly caused un-consented harmful contact to Y.H.'s person in that Officer Gary Luke intentionally shot Y.H with a taser while he was unarmed and did not flee.

44. Defendant Village of Sauk Village, by and through its employee police officer Gary Luke, did not have any justification to use such force against the minor Y.H. Indeed, Officer Gary Luke tased Y.H. as a punishment.

45. As a direct and proximate result of Defendant Sauk Village's intentional conduct, by and through its employee police officer, Gary Luke, Y.H. sustained severe physical and traumatic emotional injuries.

**WHEREFORE**, Plaintiff, is seeking compensatory and punitive damages, plus costs and attorney's fees and any other relief this court deems reasonable and just.

## 42 U.S.C. § 1983 - EXCESSIVE FORCE in Violation of Fourth And Fourteenth Amendments of The United States Constitution - (v. Officer Gary Luke, official and individual capacity)

46. At all times alleged herein, Gary Luke was a uniformed Sauk Village police officer acting under color of law.

47. Officer Gary Luke's use of taser force against Y.H., a minor, was objectively unreasonable because Y.H. did not pose an imminent threat of death or serious bodily injury to Officer Gary Luke or any other person. Y.H. did not flee or attempt to flee the officers.

48. The force used by Officer Gary Luke was inappropriate, unwarranted and unjustified.

49. Defendant used his taser to summarily punish Plaintiff because Defendant did not like Y.H. Defendant forwent any judicial process and dispensed justice through his taser.

50. The conduct of Officer Gary Luke constituted excessive force in violation of the Fourth Amendment of the United States Constitution, as incorporated into the Fourteenth Amendment of the United States Constitution.

**WHEREFORE**, Plaintiff prays for compensatory damages, Plaintiff further prays for attorney's fees, and costs pursuant to 42 U.S.C. §1988, and any other relief this court deems reasonable and just.

## NEGLIGENT SPOLIATION - (v. Village Of Sauk Village)

51. Defendants had a duty to preserve all video and evidence surrounding the tasing of Y.H. Defendants' duty was incurred when Plaintiff sent a letter *via* facsimile and *via* U.S. Mail demanding the Village of Sauk Village and the Sauk Village Police Department preserve any and all evidence, inter alia, video in the police station, dashboard video, and body cameras.

52. Defendants breached its duty to preserve the evidence when it failed to download and electronically save video depicting Y.H. inside the police department.

53. Defendants breached its duty to preserve evidence when it intentionally modified or altered the video that depicted events of the pre-tasing of Y.H. And, upon information and belief, deleted, modified, or altered footage depicting the *actual* tasing of Plaintiff, Y.H. This video was contained on Officer Gary Luke's body camera. Not surprisingly, Defendants have absolutely no body camera policies, orders or directives.

54. The video indicated it was "modified" the day Officer Gary Luke went to the home of Y.H and intimidated the family, as alleged herein. Officer Gary Luke abruptly left Plaintiff's residence when he discovered he was being recorded by cellular phone. At 7:15 p.m., later that day, someone "modified" the video that depicted the pre-tasing events of Y.H.

55. As a direct and proximate cause, Plaintiff has been unable to fully review the conduct of Officer Gary Luke, and whether or not Gary Luke was presented with any physical threat to discharge his taser at the minor Plaintiff.

56. As a direct and proximate cause of Defendants' conduct, evidence is not available to fully and adequately depict the horrifying experience Y.H. endured.

57. As a direct and proximate cause, Defendants have seriously impeded justice in ascertaining the truth of Officer Gary Luke's conduct. Moreover, Plaintiff may not fully be able prove his case due to deleted, altered, or modified evidence.

**WHEREFORE**, Plaintiff prays for compensatory damages, attorney's fees and costs and any other relief this court deems reasonable and just.

Signed: May 19, 2016

                                                  Respectfully submitted,

Signed:      <u>/s/ Daniel A. Dailey</u>

                    James D. Montgomery, Sr.
                    jmontgomery@jdmlaw.com

                    Daniel A. Dailey
                    ddailey@jdmlaw.com

**James D. Montgomery and Associates, Ltd.**
One North LaSalle Street, Suite 2450
Chicago, IL 60602
Phone: (312) 977-0200
Fax: (312) 977-0209
Firm ID: 91165