IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AISHA MICHEL, as Mother and Legal Guardian of Y.H., a Minor, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 16 CV 5390<br>)<br>) |
| VILLAGE OF SAUK VILLAGE, a municipal corporation, MAYOR DAVID HANKS, in his official capacity, OFFICER GARY LUKE, individually and in his official capacity, SAUK VILLAGE CHIEF OF POLICE, in his official capacity, | ) Judge Sara L. Ellis<br>)<br>) Judge Sidney I. Schenkier<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**JOINT DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO BIFURCATE *MONELL*
CLAIM AND TO POSTPONE TRIAL AND DISCOVERY ON THIS CLAIM**

Pursuant to Fed. R. Civ. P. 42(b), Joint Defendants, Village of Sauk Village, Mayor David Hanks, and Officer Gary Luke, move this court to (1) bifurcate plaintiff's §1983 claims against it, and (2) postpone trial and discovery on this claim. In support, Defendants state:

**BACKGROUND**

Plaintiff, Aisha Michel, filed her original complaint on May 19, 2016, naming four Defendants, Village of Sauk Village, Mayor David Hanks in his official capacity only, Officer Gary Luke, and an unnamed Sauk Village Chief of Police. The unnamed Sauk Village Chief of Police was dismissed on July 26, 2016. The Complaint seeks to hold Officer Luke liable pursuant to 42 U.S.C. §1983, for a taser incident alleged to have occurred on July 14, 2015 which Plaintiff claims was excessive force was used. Plaintiff also seeks to hold Sauk Village and Officer Luke liable for battery alleged to have been cause by Officer Luke. Additionally,

against Sauk Village, Plaintiff has alleged negligent spoliation. Finally, Plaintiff has filed a *Monell* claim against Sauk Village and Mayor David Hanks in his official capacity. This *Monell* claim is based upon an alleged failure by Sauk Village to train officers on the use of tasers. It is this claim which Joint Defendants seek to bifurcate.

Pursuant to Rule 42(b), the Joint Defendants move this Court to (1) to bifurcate the *Monell* claims against the Village from the underlying claim against Officer Luke, and (2) postpone trial and discovery on the *Monell* claims until the resolution of all claims against Officer Luke. The common-sense, pragmatic values embodied in Rule 42(b) favor bifurcation because, in the event the excessive force claim fails, there will be no need for a lengthy and complex trial on the Village's policies, practices, and customs liability. Moreover, the potential for undue prejudice to Officer Luke in this case is significant and bifurcation will prevent the prejudice. For the reasons explained in detail below, the Joint Defendants ask this Court to grant this motion.

**ARGUMENT**

District courts have broad discretion in ordering the bifurcation of a plaintiff's claims as part of their inherent power to control their docket. *See Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000). Rule 42(b) allows district courts to separate the trial of any issue if separation is warranted "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." *Berry v. Deloney*, 28 F.3d 604, 610 (7th Cir. 1994) (citation omitted). Importantly, only "one of these criteria need be satisfied for a court to order a separate trial." *Id.* Here, bifurcation of the *Monell* claims and postponement of the trial and discovery related to these claims best serve the interests identified in Rule 42(b) of avoidance of prejudice as well as convenience, expedition, and economy.

This court should bifurcate and bar a trial on Plaintiff's claims against the Village of Sauk Village in the interest of convenience, judicial economy, to expedite the trial, and to avoid undue prejudice to Officer Luke, Mayor Hanks, and Sauk Village. Additionally, a discovery bar should be entered for these same reasons.

**I. EVIDENCE AND ARGUMENT AT TRIAL THAT THE VILLAGE HAD AN UNCONSTITUTIONAL POLICY OR PRACTICE IS AN INEFFICIENT USE OF THE COURT'S AND PARTIES' RESOURCES**

Evidence at trial regarding alleged unconstitutional policies and practices of the Village of Sauk Village needlessly wastes judicial resources. In order to establish municipal liability against the Village, Plaintiff must prove not only the underlying constitutional violation, but also prove that the municipality's policies or customs were the "moving force" behind the alleged constitutional deprivation. Upon doing so, Plaintiff will be entitled to judgment against the Village and potentially an award for compensatory damages. However, if a jury finds that one of Officer Luke violated Plaintiff's constitutional rights, then a judgment will be entered against that Officer Luke and Plaintiff will be automatically entitled to indemnification by the municipality for the compensatory damages awarded against the offending officer. Plaintiff cannot recover additional damages from the Village except those already awarded against the offending officer. For this reason, pursuing a claim for municipal liability gains Plaintiff nothing, and only bogs trial down with tedious evidence and argument related to the Village's policies and customs. On the other hand, the excessive force claim is straightforward and trial of those issues is anticipated to be relatively brisk.

Bifurcation promotes judicial economy, and thus protects this Court's interests. Bifurcation of the *Monell* claims eliminates the need for (1) ruling on the summary judgment

3

motion that the Village and Mayor Hanks inevitably will bring[1]; and (2) if their motion for summary judgment is denied, presiding over a trial that will be significantly lengthier, and legally and factually more complex, if the jury is allowed to hear evidence unrelated to Officer Luke of a pattern, practice, custom, or policy. *See Medina v. City of Chicago*, 100 F. Supp. 2d 893, 895 (N.D. Ill. 2000) (the "trial of the claims against the individual officers is . . . likely to be shorter, and perhaps significantly shorter, than a trial also involving *Monell* claims"). The Seventh Circuit has endorsed bifurcation as a means to avoid "the waste of the valuable time and resources of the court," as well as of serving the interests furthered by Rule 42(b). *See Treece v. Hochstetler*, 213 F.3d 360, 365 (7th Cir. 2000).

### A. Municipal liability in this case is contingent on a finding that Officer Luke violated Plaintiff's constitutional rights.

The Village and Mayor Hanks can only be liable if the jury finds that Officer Luke violated Plaintiff's constitutional rights by using unreasonable force. For § 1983 liability to attach to a municipality, a plaintiff must establish that an unconstitutional municipal policy or custom was the moving force behind a constitutional violation committed by a municipal employee. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690–91, 694 (1978). There can be no municipal liability if a jury finds that the police officer did not violate the plaintiff's constitutional rights. *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("But this was an action for damages, and neither [*Monell*] nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm.").

The Seventh Circuit recently held that a municipality could not be liable under *Monell* and § 1983 for the alleged unconstitutional seizure of plaintiff if the police officers did not

---

[1] Based on the information currently available, it appears that the gravamen of plaintiff's purported *Monell* evidence will be two alleged incidents not involving excessive force and not implicating violations of constitutional rights.

4

violate plaintiff's Fourth Amendment rights. *Matthews v. East St. Louis*, 675 F.3d 703, 709 (7th Cir. 2012) ("Here, there was no constitutional violation, therefore no municipal liability."). Matthews reaffirmed that where no constitutional violation occurs, there is no municipal liability regardless of the municipalities' custom, practice or policy. *Matthews* at 709. Only when the officers were acquitted based upon a defense of good faith does the municipality custom, practice or policy make it potentially liable under *Monell*. *Matthews* at 709.

In this case, Plaintiff alleges that Offer Luke's alleged unconstitutional conduct was undertaken pursuant to the Village's policies, practices, and customs. It necessarily follows that Plaintiff must prove that Officer Luke violated his constitutional rights for liability to be imputed to the Village and Mayor Hanks under § 1983. See *Heller*, 475 U.S. at 799; *Matthews*, 675 F.3d at 709. A finding that Officer Luke did not use unreasonable force against Plaintiff is inconsistent with a finding that the Village's policies, practices, and customs were the moving force behind Plaintiff's alleged constitutional deprivations. Cf. *Heller*, 475 U.S. at 799; *Thomas*, 604 F.3d at 305. If Plaintiff fails to prove that Officer Luke violated his constitutional rights, then Plaintiff cannot prove that the Village is liable for his alleged constitutional deprivation.

> **B. If Plaintiff obtains a judgment against Officer Luke, then the Village must indemnify Officer Luke for compensatory damages.**

If the jury determines that Officer Luke violated Plaintiff's constitutional rights and this court enters a judgment against him for compensatory damages, then the Village must indemnify Officer Luke for the compensatory damages, pursuant to Section 9-102 of the Local Governmental and Governmental Employees Tort Immunity Act ("A local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages (and may pay any associated attorney's fees and costs) for which it or an employee while acting within the scope of his employment is liable in the manner provided in this Article."). Pursuant

to § 9-102, the Village must indemnify Officer Luke in this case for any judgment for compensatory damages entered against him. Compensatory damages are the only damages available against the Village in this case. Thus, any judgment for compensatory damages entered against Officer Luke will be paid by the Village, and no additional damages are available from the Village.

> C. Since the Village of Sauk Village is required to pay any compensatory damages awarded in this case against Officer Luke, proving municipal liability against the Village does not gain Plaintiff additional damages.

As set forth above, before Plaintiff can establish municipal liability in this case, he must first prove that Officer Luke violated Plaintiff's constitutional rights. Then, to establish municipal liability, he must also prove that the Village's policies and customs were the moving force of the violation. *Monell*, 436 U.S. at 694. Proving the "moving force" prong will require evidence and argument regarding the Village's policies and customs, training of Officer Luke and his knowledge of the Village's policies and customs, as well as evidence establishing prior incidents of alleged constitutional deprivations. Such evidence will consume the court's and the parties' time, and distract the jurors from the issue of whether Officer Luke actually violated Plaintiff's constitutional rights. Moreover, to defend against the *Monell* claim, the Village would likely have to call to testify its past and present Chiefs of Police, Members of the Board of Police and Fire Commissioners, possibly the Mayor, and any person that has given training sessions on the use of force. Additionally, regarding the alleged prior conduct, Plaintiff will need to put forth evidence that the underlying prior acts actually happened, or happened as alleged.

Bifurcation of Plaintiff's *Monell* claim will not affect Plaintiff's recovery of any compensatory damages that a jury may award. Plaintiff is not entitled to recover any additional compensatory damages if he prevails against the Village on his *Monell* claims after a finding of liability against Officer Luke. *See Spanish Action Committee of Chicago v. City of Chicago*, 766

F.2d 315, 321 (7th Cir. 1985). If a jury finds a violation of Plaintiff's constitutional rights against Officer Luke, this Court would simply enter a judgment against the Village for any compensatory damages found to have been caused by the constitutional violation. Likewise, if no underlying constitutional violation is found, this Court would enter judgment in favor of the Village. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (Finding that if the officer inflicted no constitutional harm on the plaintiff, it was "inconceivable" that the city could be liable to the plaintiff); *Treece v. Hochstetler*, 213 F.3d 360, 361 n. 2 (7th Cir. 2000), *quoting Tesch v. County of Green Lake*, 157 F.3d 465, 477 (7th Cir. 1998)("[A] municipality is not liable for a constitutional injury unless there is 'a finding that the individual officer is liable on the underlying substantive claim'"); *Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 597 (7th Cir. 1997)(The City cannot be held liable "on a failure to train theory or on a municipal policy theory absent a finding that the individual officers are liable on the underlying substantive claim"); *Thompson v. Boggs*, 33 F.3d 847, 859 (7th Cir. 1994)(Jury verdict in favor of defendant officer on the question of whether he used excessive force "precludes the possibility that [the plaintiff] could prevail on his *Monell* claim").

Although litigation of the *Monell* claims provides no monetary gain to plaintiff himself, such litigation does generate often substantial attorney fees under §1983 that accrue solely to plaintiff's counsel. The late Judge Moran explained:

> [W]e are often unsure of the impetus behind alleging *Monell* claims in cases such as this one. * * * [C]laims of municipal liability require an extensive amount of work on the part of plaintiff's attorneys and experts, and an extraordinary amount of money must be spent in order to prepare and prove them. But to what end? If the plaintiff prevails against the officer on a §1983 claim, he or she is not likely to want or need to proceed any further, at least in this district and state. An Illinois statute directs local governments to pay tort judgments for compensatory damages for which its employees are liable, see 745 ILCS 10/9- 102; the Seventh Circuit has held that this statute permits the §1983 plaintiff to bring a claim directly against the municipality and obtain a judgment requiring the municipality to pay

7

the amount due to the plaintiff from the officer. Nor do we believe the municipality is more likely to be deterred when sued in its own capacity given that *Monell* claims rarely make it to trial. Furthermore, even if the city is found liable, punitive damages are not an available remedy. (Citations omitted). *Moore v. City of Chicago*, 2007 WL 3037121, at *9 (N.D. Ill. Oct. 15, 2007).

## II. PROCEEDING WITH THE *MONELL* CLAIM AGAINST THE VILLAGE WILL PREJUDICE OFFICER LUKE

Rule 42(b) expressly identifies avoidance of prejudice as grounds for bifurcation. If the claims against the Village and Officer Luke go to trial at the same time, Officer Luke will suffer severe prejudice. To prove that the Village's policy or custom was the moving force behind Plaintiff's constitutional deprivation, Plaintiff will attempt to introduce evidence and argument not only involving past incidents of constitutional violations committed by officers at the Village.

The excessive force claims against Officer Luke involve a single incident of alleged use unreasonable force against Plaintiff, while he was resisting arrest. Evidence of the Village's alleged systemic deficiencies in it policies or customs, and evidence of unrelated incidents and lawsuits has no bearing whatsoever on determining whether Officer Luke's use of force was "objectively reasonable in light of the facts and under the circumstances confronting the officer at the time of the incident, without regard to the underlying motive or intent of the officer." *Common v. City of Chicago*, 661 F.3d 940, 943 (7th Cir.2011).

Broader evidence of unrelated incidents of misconduct and the Village's policies and practices for addressing officer misconduct will contaminate the jurors' minds in its consideration of the liability of Officer Luke, in such a way that no limiting instruction can cure. Such evidence will be unfairly prejudicial to Officer Luke in their attempts to defend himself against Plaintiff's claim. Bifurcation of the claims here protects Officer Luke from the likely prejudice caused by the introduction at trial of extensive and extraneous evidence of alleged

8

systemic deficiencies in policies or procedures. See *Demouchette v. Sheriff of Cook County*, 09 C 6016, 2011 WL 679914 (N.D. Ill. Feb. 16, 2011) (Keys, M.J.)(without bifurcation, "the individual defendants could face unusual difficulty in distinguishing their own acts that allegedly violated Plaintiff's constitutional rights from evidence that would be introduced to support claims against the County."); *Ojeda-Beltran v. Lucio*, No. 07 C 6667, 2008 WL 2782815 (N.D. Ill. July 16, 2008) ("We believe that there is a real 'danger that evidence admissible on the issues relating to conduct by the City ... will contaminate the mind of the finder of fact in its consideration of the liability of the other defendant[s].'").

Indeed, this Court has previously bifurcated *Monell* claims. In *Fuery, et al. v. City of Chicago, et al.*, 2015 WL 715281, Judge Ellis noted that the potential for prejudice is sufficient justification to bifurcate, especially where the *Monell* claim adds no additional recovery and where indemnification by the municipality for compensatory damages is certain. Such rationale is applicable here and should be followed.

## CONCLUSION

WHEREFORE, Defendants, Village of Sauk Village, Mayor David Hanks, and Officer Gary Luke, respectfully request this Court to (1) bifurcate Plaintiff's §1983 *Monell* claims against the Village of Sauk Village and Mayor David Hanks pursuant to Rule 42(b); and (2) postpone the discovery and trial on this claim.

Respectfully submitted,

Leslie Quade Kennedy  
ODELSON & STERK, LTD.  
3318 West 95th Street  
Evergreen Park, IL 60805  
(708) 424-5678  
lkennedy@odelsonsterk.com

VILLAGE OF SAUK VILLAGE

By: s/ Leslie Quade Kennedy  
One of their Attorneys

9

Eydie R. Glassman  GARY LUKE
Glassman Law Offices
350 S. Northwest Highway, Suite 300
Park Ridge, IL  60068  By:  s/ Eydie R. Glassman
*eglassman@glassmanlawoffices.com*

10