# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| **AISHA MICHEL**, as Mother and Legal Guardian of Y.H., a Minor, | * * * | |
| *Plaintiff,* | * | No.16-cv-05390 |
| v. | * * | |
| **VILLAGE OF SAUK VILLAGE**, a Municipal Corporation, and Officer **GARY LUKE**, | * * * | Judge Sara L. Ellis |
| | * | Judge Sidney I. Schenkier |
| *Defendant.* | * | |

## MOTION FOR ORDER TO PRESERVE ALL EVIDENCE

Now, comes Plaintiff, Aisha Michel, on behalf of Y.H., requesting this Court to enter an Order directing Defendant, Village of Sauk Village, to preserve all evidence pertaining to the claims in this litigation. Defendant modified, withheld, misrepresented, and "lost" valuable evidence, which has *already* prejudiced the Plaintiff's case and prevented the identification of numerous victims to Defendant's intimidation tasing practices. In support, Plaintiff avers the following:

**Procedural History**

1. Plaintiff ,Y.H., as a minor, was unjustifiably tased on July 14, 2015 due to a tasing intimidation practice of the Sauk Village Police Department. Plaintiff sent preservation letters on July 16, 2015 to Defendant to preserve several documents including videos. (See Exhibit A). On July 24, 2015, Plaintiff began investigating the facts related to the occurrence on July 14, 2015 and sought documents pursuant to the Freedom of Information Act (FOIA).

2.       During the course of the investigation, Plaintiff, Y.H., was forced to obtain a Court Order under Illinois Supreme Court Rule 224 for his own records. Next, Defendant forced Plaintiff to file appeals to the Illinois Attorney General's Office. Ultimately, Plaintiff terminated the appeals when she discovered mispresentations by the FOIA officer and she filed an injunction for violations of FOIA on November 10, 2015. (See Exhibit B). Exhibit B is Plaintiff's filed injunction with exhibits for further detail of Defendant's FOIA violations.

3.       Finally, Plaintiff filed a federal complaint on May 19, 2016, on behalf of her minor son after Plaintiff discovered a video was modified. Among the four claims, the Complaint alleges spoliation of evidence because on July 28, 2015 Defendants modified a video depicting the events occurring at the time Y.H. was tased, despite Plaintiff's July 16, 2015 preservation letter. (See Compl. ¶ 51-57). In addition, Defendant admitted they purged holding cell video because the cameras are on an "automatic 45-day purge." (See Exhibit M).

4.       Plaintiff met and conferred with Defendant on September 7, 2016, via electronic mail. Defendant advised they would oppose the motion.

**Factual Background**

5.       Plaintiff sent FOIA requests relating to the July 14th incident and specifically requested taser discharge reports, taser policies, body camera, dashboard, and holding cell video (among other "document" requests). (See Exhibit C). This prompted Mayor David Hanks to make a public statement that,

> "In August of 2015, our Village Administrator learned that neither the former Chief nor his Deputy Chief had developed policies authorizing the use of taser weapons for our Officers. After conferring with the Village's Risk Insurance Company, they recommended the Village discontinue the use of taser weapons until a policy could be created." (See Exhibit D).

6.       Moreover, during Plaintiff's investigation she learned of an email from Deputy Chief Rebecca Salisbery to Public Safety Director J.W. Fairman, dated August 20, 2015, stating,

*"There is no existing Departmental General Order specifically detailing the use of Tasers for the Sauk Village Police Department. Therefore , I have attached my DRAFT copy for your review."* (See Exhibit E).

7. Village Trustees, the Mayor, the Village Attorney, and the Deputy Chief were recorded, during a public meeting, discussing the Mayor's order to discontinue the use of tasers. During this discussion, the Village Attorney explained to all trustees, and the public in attendance, the ramifications of not having taser policies, and insisted that the Village needed a use of force continuum. Officials for the Village admitted during the discussion that they did not have general orders specifically tailored to taser use.[1]

8. ***Incredulously,*** Defendant's 26(a) Disclosures include a 2007-1 General Order for the Use of Tasers. (See Exhibit F, compare with Exhibit D and E). This 2007 General Order is being disclosed almost *one year later* and after Plaintiff expended significant resources, which calls into question the integrity and authenticity of such document.

9. Defendant has developed a pattern of withholding, modifying or losing evidence with respect to taser use. During the course of Plaintiff's investigation, she was repeatedly told that computer systems were down and she could not get the taser discharge report(s), among other documents. (See Exhibit G). More than four months later, Defendant orally advised that no one from the Village understood what a taser report was, or how to download one, so Plaintiff sent the Taser X-26 manual via email. In response, Defendant did not specifically address the missing taser discharge reports, but stated "there are no additional documents." (See Exhibit H).

---

[1] https://www.youtube.com/watch?v=P2JeiHMCXwo&feature=em-share_video_user.

10. *Miraculously,* the Defendant provided a taser discharge report for Defendant Gary Luke's taser, in its 26 (a) Disclosures, again after a year of fighting for such documents. (See Exhibit I).

### 1. Defendant made Misrepresentations

11. On September 28, 2015, Plaintiff sent a summary that detailed the missing documents, including video(s) and taser reports. (See Exhibit J).

12. On October 1, 2015, the Defendant, by and through counsel Odelson & Sterk, represented that, "if there are in fact additional documents, I will forward them to you." (See Exhibit K). This was a misrepresentation, as the video recorded meeting on August 28th depicted the Deputy Chief of Police advising the Trustees that "[she] tendered all the video to Mr. McGrath" (of Odelson & Sterk). Meaning, <u>Defendant had the video depicting the tasing of the minor since August 28, 2015 *in their own office,*</u> yet on October 1, 2015 continued to represent to Plaintiff's counsel that *if* the [videos] existed, they would forward them to the Plaintiff.

13. As a result, on November 9, 2016 Plaintiff terminated her appeals to the Illinois Attorney General and filed an injunction when she discovered misrepresentations relating to possession of videos.

### 2. Defendant "Lost" Evidence

14. Plaintiff requested tasing incident reports for 2013-2015, and Defendant provided only minimal reports for 2015 and reports for 2013 (outside the statute of limitations). Defendant knew that 2014 was the most crucial year for purposes of a class action investigation. Defendant claimed they were "unable to locate the 2014 taser incident reports." (See Exhibit L). Plaintiff has exhausted all means to avoid wasting judicial resources in investigating the number of claims of taser misuse (detailed further in Plaintiff's pending Response to Defendants' Motion

to Bifurcate and Stay Discovery on *Monell* claim). It is clear Defendant will not comply with duties to preserve evidence or provide public documents pursuant to FOIA.

### 3. Defendant will never comply with Plaintiff's Preservation Letter

15. Plaintiff sent preservations letters just ***two days after*** the July 14th incident, and therefore all evidence should have been preserved pursuant to this duty. Defendant just refused or failed to preserve video from the holding cell footage where the minor was booked. Defendant claimed that the video system purges after 45 days. (See Exhibit M). Video footage relating to Y.H. should never have been purged because a preservation letter was issued on July 16, 2015.

16. Defendants' state that Y.H. made a statement that would justify him being tased, "upon his arrival at the police department." (See Exhibit N). At least two officers claim this statement was made, but now there is no video to corroborate that a conversation even took place.

**Legal Argument**

17. There is no question that, even without a court order, parties to civil litigation may not destroy evidence. *See*, *e.g.*, *Lekkas v. Mitsubishi Motors Corp.*, 2002 WL 31163722, at *3 (N.D. Ill. Sep. 26, 2002). There is similarly no question that Federal Rules of Civil Procedure empower this Court to order the preservation of evidence. *See*, *e.g.*, *Treppel v. Biolvail Corp.*, 249 F.R.D. 111, 119-20 (S.D.N.Y. 2008). A party has a duty to preserve evidence, including any relevant evidence over which the party has control and reasonably knew or could reasonably foresee was material to a potential legal action. *Domanus v. Lewicki,* 284 F.R.D. 379, 2012 U.S. Dist. LEXIS 81651 (N.D. Ill. 2012) (internal citations omitted).

18. In addition to this duty, the court has broad discretionary power to order a party to preserve evidence. *In re African-American Slave Descendants' Litig.*, 2003 U.S. Dist. LEXIS 12016, 2003 WL 24085346 (N.D. Ill. July 14, 2003). A preservation order is an injunctive

remedy that should issue "upon an adequate showing that equitable relief is warranted." *Id.* at 8. In rendering this determination, the court considers: "1) whether Plaintiffs can demonstrate that Defendant will destroy necessary documentation without a preservation order; 2) whether Plaintiffs will suffer irreparable harm if a preservation order is not entered; and 3) the burden imposed upon the parties by granting a preservation order." *Id.*

19. Defendants have *already* failed or refused to preserve holding cell video despite Plaintiff's preservation letter.

20. Defendants have *already* modified an existing video despite Plaintiff's preservation letter. (See Compl. ¶ 51-57). It is without question, that modification of the video depicting the actual tasing of Y.H. is highly prejudicial to Plaintiff and this court, as that video would greatly assist the trier-of-fact in ascertaining the truth of Defendant's tasing practices.

21. Defendants claim Y.H. made a statement "upon arrival to the Police Department." The purging of the holding cell video highly prejudices Plaintiff from determining what, if any, conversation occurred in that police department and outside of the brief conversation captured on Officer Gary Luke's body camera (which did not contain the alleged statement).

22. Moreover, Plaintiff's claim that there were no policies, is critical to her claim for deliberate indifference to train and supervise that prompted a class action investigation at the inception of this case. It is not a coincidence that a policy on tasing from 2007 miraculously appears when discovery is about to begin. Therefore, it is critical to determine how and when this 2007 General Order appeared despite numerous requests for such policies.

23. Not even the Deputy Chief of Police knew this policy existed, and according to the General Order itself, the Deputy Chief of Police was required to train the officers (See Exhibit F compare with Exhibit E).

24. Plaintiff will need to thoroughly investigate who accessed this policy, when it was created, where it was stored, and any email communication regarding its discovery.

25. Defendant has consistently demonstrated their lack of adherence to the federal rules, or inherent litigation duties, and a court order is essential.[2] There is no burden to preserve the evidence and all electronic evidence must be preserved, especially at this juncture.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter an order directing the Defendant, and their employees and agents, to preserve all physical, documentary, metadata and other evidence in their possession, custody, or control relating to the allegations at issue in this case, including all video and email communications sent or received by the Defendant and their colleagues, regardless of where that information is stored.

Dated: September 9, 2016

                                            Signed By: /s/ Daniel A. Dailey

                                            Daniel A. Dailey
                                            ddailey@jdmlaw.com
                                            **James D. Montgomery and Associates, Ltd.**
                                            1 N. LaSalle, Suite 2450
                                            Chicago, IL  60602
                                            P:(312) 977-0200
                                            F:(312) 977-0209

---

[2] Defendant specifically stated they would waive service of summons on May 26, 2015. (See May 26 Email). On June 13, 2016, Plaintiff requested the executed waivers and again on June 15, 2016; Defendant stopped responding. (See June 13, 2016 Email). Plaintiff immediately served the Defendant for preparation of the status hearing. Defendant still would not respond or otherwise plead, to the complaint in 21 days. Likewise, as of September 7, 2016, Plaintiff has not received Defendant Gary Luke's 26(a) Disclosures pursuant to this Court's August 31st deadline. Defendants, collectively, have demonstrated a pattern of non-compliance with federal rules and preservation duties.

# CERTIFICATE OF SERVICE

I hereby certify that on this day I served the above **Motion for Order to Preserve All Evidence** on all parties by electronic mail and U.S. mail via the U.S.P.S..


Dated: September 9, 2016         /s/ Daniel A. Dailey
                                  Daniel A. Dailey



**Via Electronic Mail and U.S.P.S.:**    **eglassman@glassmanlawoffices.com**
                                          Eydie Glassman
                                          Glassman Law Offices
                                          Park Ridge Plaza
                                          350 S. Northwest Highway, Suite 350
                                          Park Ridge, IL 60068


                                          **lkennedy@odelsonsterk.com**
                                          Leslie Kennedy
                                          Odelson & Sterk, Ltd.
                                          3318 W. 95th Street
                                          Evergreen Park, IL 60805