# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **YOHON HARVEY**, | |
| *Plaintiff,* | No.16-cv-05390 |
| v. | |
| **VILLAGE OF SAUK VILLAGE**, a municipal corporation, **OFFICER GARY LUKE,** individually and in his official capacity, **SAUK VILLAGE CHIEF OF POLICE**, in his official capacity, | **TRIAL BY JURY** |
| *Defendants.* | |

# AMENDED COMPLAINT

Plaintiff YOHON HARVEY, by and through his attorneys, James D. Montgomery and Associates, Ltd., and complaining of the conduct and actions of the Defendants, VILLAGE OF SAUK VILLAGE, a municipal corporation, OFFICER GARY LUKE, individually and in his official capacity, SAUK VILLAGE CHIEF OF POLICE, in his official capacity, collectively ("Defendants"), and as to each of the Defendants and in the alternative, Plaintiff states the following:

## PARTIES

1. Plaintiff, Yohon Harvey, having reached the age of majority, now brings this action in his own name and in substitution of his mother and legal guardian during his minority, Aisha Michel. Plaintiff at all times relevant herein was a citizen of the United States and a resident of the Village of Sauk Village in Cook County, Illinois.

2. Defendant, Village of Sauk Village ("Sauk Village"), is a municipal corporation located in the County of Cook and the State of Illinois, and at all times

relevant provided police services in Sauk Village and employed a number of police officers through the Sauk Village Police Department. The Sauk Village mayor, David Hanks, is and was cloaked with the duty of appointing the Chief of Police. According to the most recent U.S. Census Bureau statistics for Sauk Village, African Americans comprise over 60% of the population.

3. The Sauk Village Police Department ("SVPD"), is a public body under Defendant Sauk Village; and the Defendant Sauk Village Police Chief ("SVPD Chief of Police"), has the responsibility and duty to supervise, oversee and train sworn officers.

4. Defendant Gary Luke ("Gary Luke") is and at all times relevant was a citizen of the United States, a resident of Cook County and a sworn officer employed by Defendant Sauk Village, and at all times was acting under the color of law and within the scope of his agency, services and or employment with Sauk Village.

## JURISDICTION

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367.

6. Venue is proper under 28 U.S.C. § 1391(b) because all parties reside in this judicial district and the events giving rise to the claims asserted herein occurred within this district.

## BACKGROUND FACTS

7. On July 14, 2015 and at certain other relevant times, Yohon Harvey was a minor who resided with his mother, Aisha Michel, in Sauk Village, Illinois.

8. Since 2010 SVPD Officers have been armed with tasers and specifically the X-26 Tasers ("Tasers") purchased and issued through SVPD. "Taser" is the brand name for conducted energy devices ("CED") generally used by law enforcement agencies. CEDs, such as Tasers, produce 50,000 volts of electricity. The

Taser induces pain and when emitting electricity with the prongs attached to the body stuns and temporarily disables individuals by causing involuntary muscle contractions.

9. According to a study and report published in 2011 by the U.S. Department of Justice's National Institute for Justice, most [law enforcement] agencies have a 'use of force continuum' beginning with verbal commands for compliance up to physical force. Most agencies allow only soft tactics, without physical force, against a subject who refuses to comply with commands.

10. **SVPD had absolutely no policies**, or 'use of force continuum' with training for officers using tasers on citizens of Sauk Village, for all relevant times alleged herein. In an emailed response to the Sauk Village Administrator on August 20, 2015, the SVPD Deputy Chief of Police, Rebecca Salisbury stated,

*"There is no existing Departmental General Order specifically detailing the use of Tasers for the Sauk Village Police Department…"*

11. On or about July 14, 2015, Defendant Officer Gary Luke and other Unknown Sauk Village police officers saw the plaintiff on the sidewalk playfully engaged with several other minors. At some point after exiting from his patrol car, Defendant Gary Luke fired a taser gun at the minor Yohon Harvey striking him and producing a 50,000 volt of muscle-locking electrical pulses and paralyzing shock throughout the minor's body. At the time, Plaintiff Yohon Harvey was clothed only in shorts with no shirt, shoes or socks on. On information and belief, after Defendant Gary Luke discharged his taser weapon, another Unknown Sauk Village police officer fired his taser striking the Plaintiff and further sending 50,000 volts of

electrical pulses through his body. At no time was Yohon Harvey armed with a weapon, nor did he pose a threat of harm or danger to any officer, himself or others.

12. Once the fish-like hook of the taser prongs attached to the body of the Plaintiff and electricity was dispensed, Plaintiff feel face forward to the ground further injuring his body. On information and belief, once Plaintiff was on the ground, Defendant Officer Gary Luke and or the Unknown officer used the taser to further emit pain by using it on Plaintiff's body in a drive stun mode.

13. Yohon Harvey was handcuffed, arrested and transported to the police station but was later released to his parents without charges. As a result of this traumatic experience, YOHON HARVEY suffered serious personal and emotional injuries.

14. Plaintiff sent preservation letters to the SVPD and Sauk Village on July 16, 2015, demanding the preservation of all evidence including, but not limited to, any video from dashboard camera(s) and body camera(s).

15. On Friday, July 24, 2015, Plaintiff sent requests pursuant to the Freedom of Information Act (FOIA) for several documents, videos, and reports relating to Defendants' taser policies, officer misconduct history, and specifically the July 14, 2015 tasing incident reports.

16. By Monday, July 27, 2015, Sauk Village Police Officers were harassing YOHON HARVEY and his family. Officer Gary Luke and an Unknown SVPD Officer went to Plaintiff's home on the morning of Monday, July 27, 2015 after officers discovered that FOIA requests had been made. Officer Gary Luke and this unknown SVPD officer banged on Plaintiff's front and back doors and stood post in his yard. YOHON HARVEY and his family were concerned about the intimidation

as officers continued to drive up and down the street throughout the night glaring at the family.

17. In September of 2015, the Mayor of Sauk Village publicly announced that after a review, Sauk Village learned that the Chief of Police, and the Deputy Chief of Police did not have any policies in place relating to the use of tasers, at the time the minor YOHON HARVEY was tased by Officer Gary Luke. Mayor David Hanks stated:

> In October of 2014, the former Police Chief made an "on-line" purchase of 25 Taser Weapons for the Sauk Village Police Department. In July of 2015, an Officer used one of those weapons to Taser [Y.H]. Several weeks later the Village received a pending lawsuit request from an Attorney representing [YOHON HARVEY]. In August of 2015, our Village Administrator learned that neither the former Chief nor his Deputy Chief had developed policies authorizing the use of Taser weapons for our Officers… Due to the findings, I regretfully ordered the Taser Weapons removed from use. I also instructed our attorneys to immediately have a Taser policy put in place… However, the Village is not out of the woods yet. Almost all of the Police Departments General Orders have not been updated since 2005…. It is clear that the former Police Chief and the former Deputy Police Chief have been remiss in their responsibilities to the Village and our Officers… **Exhibit A.**

18. In August of 2015, at Sauk Village's National Crime Night Out, SVPD Officers were publicly recorded conducting taser demonstrations with the knowledge and encouragement of Sauk Village. As far back as 2013, SVPD Officers, armed with tasers, have been pictured with various Village Trustees, the Mayor, and Village Administrators. Sauk Village Trustees stated that village officers had been using tasers since 2010.

19. On or about October 7, 2015, Sauk Village Freedom of Information Officers finally turned over several videos relating to, but not depicting, the *actual* tasing of YOHON HARVEY. One video depicts events prior to YOHON HARVEY being tased, and another video depicts events after YOHON HARVEY was tased and arrested.

20. Plaintiff discovered that the video captured and created on July 14, 2015, depicting events prior to YOHON HARVEY being tased, was "modified" on

5

July 28, 2015, at 7:15 pm. July 28th was the same day that notice was given to the Chief of Police, Mayor, and State's Attorney's Office, that SVPD officers were intimidating and harassing YOHON HARVEY and his family. On November 23, 2015, SVPD's Freedom of Information Officer confirmed that any additional videos had been "purged" or were not "operational," despite Plaintiff's July 16th preservation letter.

21. The pre-tasing video shows several youth, including YOHON HARVEY, walking down the street. Officer Gary Luke could be heard on the video exhibiting inappropriate behavior and yelling and directing statements at YOHON HARVEY such as, "You weak as hell." The video depicted clear disregard for the minor YOHON HARVEY. The video further depicted Officer Gary Luke following the youth for a while longer as they continued on to their destination and the video terminated.

22. The video depicting events after YOHON HARVEY was tased, shows YOHON HARVEY walking inside the police station agonizing in pain. Inside the station, Officer Gary Luke placed the shirtless, barefoot minor against a wall with his arms extended above his head. As Officer Gary Luke repeatedly jerked on the taser "barbs" deeply lodged in YOHON HARVEY's flesh, YOHON HARVEY could be heard expressing his pain. Officer Gary Luke could be heard telling YOHON HARVEY, *"You are in custody, you 'gotta' relax,"* and the Unknown SVPD Officer then stated, **"…or you're gonna get tased again."** Again, YOHON HARVEY had his hands extended, was non-combative and was not resisting.

23. Officer Gary Luke even **bragged** about SVPD's taser policy or lack thereof on video, when he stated to YOHON HARVEY's mother, "I'll be honest - normally I don't warn." On information and belief, Defendant Gary Luke was referring to the fact that he does not yell out "taser" or gives any warning before deploying his taser on a citizen.

24. Since 2013, SVPD officers have been documented tasing victims including minors like Yohon Harvey. About 25 tasing incidents and counting have been discovered when SVPD did not have a single directive, policy or order in place. On one occasion in particular, a SVPD Officer tased an unarmed fourteen-year old African American girl weighing approximately 110 lbs., who was a block from her home. The 14-year-old girl was tased because she allegedly ran from an officer.

25. Sadly, SVPD has lost, destroyed, or failed to record numerous tasing incidents. On another occasion an SVPD Officer was video recorded improperly threatening the use of a taser because the SVPD Officer believed the youth used profanity. The officer failed to record this incident in the incident log or a police report, and but for a video recording, this incident would have gone undetected.

26. Without tasing policies, a 'use of force continuum', training, or procedures, SVPD Officers have tased countless citizens including minors, and lost, destroyed or simply failed to record and or memorialize the incidents.

## 42 U.S.C. § 1983 - DELIBERATE INDIFFERENCE –
### To Adequately Train and Supervise
### (v. Sauk Village and the SVPD Chief of Police)

27. At all relevant times, Defendants Sauk Village by and through its police department and the SVPD Chief of Police had a duty to train and supervise police officers within Sauk Village.

28. At all relevant times, Defendants purchased and armed SVPD officers with tasers, and thereby incurred the duty to train and supervise officers on the proper use of force with tasers. Defendants knew or should have known the risks of injuries to individuals who were tased. In fact, SVPD officers had a public tasing demonstration to show the resulting risks of being tased.

29. Defendants publically admitted they had no taser policies in effect, at all relevant times alleged herein. In fact, the Defendants stated:

7

> *"It is clear that the former Police Chief and the former Deputy Police Chief have been remiss in their responsibilities to the Village and our Officers."*

30. The Defendants, Sauk Village and the SVPD Chief of Police were "remiss," and indifferent in their responsibility owed to the public. The Defendants never trained, supervised, or directed SVPD Police Officers on the use of tasers and as a direct and proximate cause, Officer Gary Luke and an Unknown police office unlawfully discharged and used a taser on an unarmed minor, YOHON HARVEY, when the minor presented no physical threat to any officer and or pose a risk of harm. Most disturbing, SVPD Officers had a history of shooting minors with tasers since 2013 as alleged herein.

31. Defendant Sauk Village acquiesced to the use of tasers without a general policy, directive, or order by its police officers. A Sauk Village Trustee stated in a video recorded meeting, "We have had tasers since 2008, 2010." In fact, prior to the tasing of YOHON HARVEY, the Defendants conducted a review of all of the general orders and directives and never reviewed or discussed a taser policy, but authorized its use on citizens. Sauk Village Trustees publicly stated they were "careless" in their review of policies.

32. Defendants knew they had never reviewed, analyzed, nor discussed policies relating to the use of tasers by SVPD. Nevertheless, SVPD officers were openly and publicly using tasers on citizens of Sauk Village, including minors.

33. Defendant, Sauk Village, knew, promoted, permitted and authorized the use of tasers by its Sauk Village Police Officers without a single general order, policy, or directive in place. The unreasonable and unjustified use of tasers was a permanent and prevalent practice for several years without the proper training or policies being provided to certain Unknown Sauk Village Police Officers and particularly to Officer Gary Luke.

34. Defendants knew that since 2013, SVPD Officers were tasing minors as young as 14 years old and prior to the tasing of 17 year old YOHON HARVEY. Defendants never instituted a single policy, order or training class to ensure that officers were safeguarding the rights of the minors. Most law enforcement agencies have strict policies on tasing minors, but Defendants choose not to institute ***any*** policies. But for YOHON HARVEY securing legal counsel, Defendants never would have addressed SVPD's unconstitutional and unreasonable tasing practices.

35. Defendants failed to train its officers on the reasonable and appropriate use of force when using tasers including as it relates to interactions with minors. Indeed, certain Unknown SVPD Officers have established a custom, policy and usage, of threatening the use of taser force, based on the officers' "personal" reasons as alleged herein.

36. As a direct and proximate cause of the Defendants' deliberate indifference to train, supervise or institute proper policies, Sauk Village Police officer(s) have been engaging in the use and threatened use of tasers to summarily punish citizens including minors such as YOHON HARVEY.

37. As a direct and proximate cause of the Defendants' deliberate indifference to train, supervise or institute proper policies, certain Unknown SVPD Officers failed to record or memorialize the use and threatened use of tasers. On March 10, 2015, another SVPD Officer threatened to discharge his taser when he approached the minor Plaintiff and a group of youth who were playing basketball in the street. The officer detained the minor Plaintiff, pulled his taser and placed it to the Plaintiff's back in a drive stun manner and threatened to tase him. Ultimately the minor Plaintiff ran away in fear for his safety. The involved officers never made a record of this incident, and but for a cellular phone camera, the incident would have gone undetected.

38. As a direct, and proximate cause of the Defendants' deliberate indifference to train, supervise or institute policies, Defendants, Officer Gary Luke,

and certain Unknown SVPD Officers, have a practice and custom of using and threatening the use of tasers on unarmed, non-threatening citizens as punishment and harassment tactics in violation of the Fourth and Fourteenth amendments.

39. As a direct result of Defendants' deliberate indifference to properly train or supervise SVPD officers, Unknown SVPD Officers have used and threatened the use of taser force against minors including the Plaintiff and other members of the public. In the video depicting the post-tasing events of Yohon Harvey, the Unknown SVPD Officer threatens additional taser use on the minor as he stood helpless with his arms outstretched on the wall.

40. As a direct result of Defendants' deliberate indifference to properly train or supervise SVPD officers, citizens often times, such as YOHON HARVEY, are not warned about the eventual use of a taser by the involved police officers. In fact, in the video depicting the post-tasing event on July 14, 2015, Defendant Gary Luke brags that he normally does not warn any suspect prior to tasing that individual. This behavior by SV police officers exhibits clear, articulated indifference to violating the civil rights of the residents of Sauk Village.

41. As a direct result of Defendants' deliberate indifference to properly train or supervise, Officer Gary Luke, and certain Unknown SVPD Officer(s) developed and enforced a custom, practice, and usage of summarily punishing suspects, including minor youths, with tasers and/or the threat of tasers in violation of their civil rights.

42. As a direct and proximate cause of the Defendants' deliberate indifference to train, supervise or institute proper policies, Sauk Village Police officer(s) have no guidance on what Sauk Village deems a proper and "legal" use of taser force on citizens of Sauk Village. SVPD Officers have been using their tasers on whomever, whenever, and however they want, and without lawful provocation.

43. As a direct and proximate cause of the Defendants' deliberate indifference to train, supervise or institute proper policies, the number of victims tased by SVPD Officers may be difficult to ascertain and requires immediate judicial intervention.

44. As a direct result of Defendants' conduct, Plaintiff has suffered and continues to suffer severe emotional distress, and severe pain and suffering.

**WHEREFORE**, Plaintiff prays for compensatory damages, injunctive and declaratory relief. Plaintiff further prays for attorney's fees and costs pursuant to 42 U.S.C. §1988 and any other relief this court deems reasonable and just.

### **BATTERY**—Against Officer Gary Luke-*Respondent Superior*
(v. Village of Sauk Village)

45. Defendant Sauk Village, by and through its employee police officer, Gary Luke, intentionally and forcibly caused un-consented harmful contact to YOHON HARVEY's person in that Officer Gary Luke intentionally shot Y.H with a taser while he was unarmed and did not pose a risk of harm to the officer, himself or others.

46. Defendant Sauk Village, by and through its employee police officer Gary Luke, did not have any justification to use such force against the minor YOHON HARVEY.

47. As a direct and proximate result of Defendant Sauk Village's intentional conduct, by and through its employee police officer, Gary Luke, YOHON HARVEY sustained severe physical and emotional injuries.

**WHEREFORE**, Plaintiff, is seeking compensatory and punitive damages, plus costs and attorney's fees and any other relief this court deems reasonable and just.

### **42 U.S.C. § 1983 - EXCESSIVE FORCE in Violation of Fourth And Fourteenth Amendments**

## of The United States Constitution - (v. Officer Gary Luke, official and individual capacity)

48. At all times alleged herein, Gary Luke was a uniformed Sauk Village police officer acting under color of law.

49. Officer Gary Luke's use of taser force against YOHON HARVEY, a minor, was objectively unreasonable because YOHON HARVEY did not pose a threat or risk of harm or bodily injury to Officer Gary Luke, himself or others.

50. The force used by Officer Gary Luke was inappropriate, unwarranted and unjustified.

51. Defendant used his taser to summarily punish Plaintiff and without provocation.

52. The conduct of Officer Gary Luke constituted excessive force in violation of the Fourth Amendment of the United States Constitution, as incorporated into the Fourteenth Amendment of the United States Constitution.

**WHEREFORE**, Plaintiff prays for compensatory damages, Plaintiff further prays for attorney's fees, and costs pursuant to 42 U.S.C. §1988, and any other relief this court

## NEGLIGENT SPOLIATION - (v. Village Of Sauk Village)

53. Defendants had a duty to preserve all video and evidence surrounding the tasing of YOHON HARVEY. Defendants' duty was incurred when Plaintiff sent a letter *via* facsimile and *via* U.S. Mail demanding the Village of Sauk Village and the Sauk Village Police Department preserve any and all evidence, inter alia, video in the police station, dashboard video, and body cameras.

54. Defendants breached its duty to preserve evidence when it failed to download and electronically save video depicting the tasing of YOHON HARVEY by SV police officers.

55. Defendants breached its duty to preserve evidence when it intentionally modified or altered the video that depicted events of the pre-tasing of YOHON HARVEY. And, upon information and belief, deleted, modified, or altered footage depicting the *actual* tasing of Plaintiff, YOHON HARVEY. This video was contained on Officer Gary Luke's body camera and or the Unknown police officer involved in the tasing incident. Defendants have absolutely no body camera policies, orders or directives.

56. The video in question indicated it was "modified" the day Officer Gary Luke and another officer went to the home of Yohon Harvey and harassed the family as alleged herein. Officer Gary Luke abruptly left Plaintiff's residence when he discovered he was being recorded by cellular phone. At 7:15 p.m., later that day, someone "modified" the video that depicted the pre-tasing events of YOHON HARVEY.

57. As a direct and proximate cause, Plaintiff has been unable to fully review the conduct of Officer Gary Luke and other involved police officers to show that the officers were not presented with any physical threat warranting the officers' discharge of taser weapons at the minor Plaintiff.

58. As a direct and proximate cause of Defendants' conduct, evidence is not available to fully and adequately depict the horrifying experience YOHON HARVEY endured.

59. As a direct and proximate cause, Defendants have seriously impeded justice in ascertaining the truth of the conduct and actions of Officer Gary Luke and other SV police officers. Moreover, Plaintiff may not fully be able to prove his case due to deleted, altered, or modified evidence.

**WHEREFORE**, Plaintiff prays for compensatory damages, attorney's fees and costs and any other relief this court deems reasonable and just.

Signed: December 16, 2016

                                            Respectfully submitted,

           Signed:       /s/ Melvin L. Brooks

                                            Melvin L. Brooks
                                            mbrooks@jdmlaw.com

                                            **James D. Montgomery and Associates, Ltd.**
                                            One North LaSalle Street, Suite 2450
                                            Chicago, IL  60602
                                            Phone: (312) 977-0200
                                            Fax: (312) 977-0209
                                            Firm ID: 91165